[Cite as *State v. Hobbs*, 2013-Ohio-3089.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2012-11-117 |
| | : | O P I N I O N |
| - vs - | | 7/15/2013 |
| | : | |
| RYAN DANIEL HOBBS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 07CR24593


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

George A. Katchmer, 1886 Brock Road, N.E., Bloomingburg, Ohio 43601, for defendant-appellant


**PIPER, J.**

{¶ 1}  Defendant-appellant, Ryan Hobbs, appeals a decision of the Warren County Court of Common Pleas denying his motion to withdraw a guilty plea.

{¶ 2}  In 2005, Hobbs began communicating with S.B. in an on-line chat room.  The two eventually met face to face and began a relationship.  In 2007, the two went to Kings Island for the day, and back to Hobbs' apartment afterwards.  S.B. showered, came into

Hobbs' bedroom, and lay across Hobbs' bed wearing a bathrobe. Hobbs began to rub S.B.'s legs and moved his hand toward S.B.'s vagina. S.B. told Hobbs to stop, but Hobbs proceeded to insert multiple fingers into S.B.'s vagina. S.B. was able to push Hobbs off of her, and tried to leave the bedroom, but Hobbs stopped her from doing so. Hobbs finally allowed S.B. to leave the room when she began banging on the widow and screaming for help.

{¶ 3} Once Hobbs allowed S.B. to leave the room, she called 911 and reported the rape. During the 911 call, Hobbs rushed at S.B. and hit her, causing the phone to fall down. Police arrived on the scene and took S.B. to the hospital. Police then went to Hobbs' apartment and found him bloodied from a knife wound to his arm. When asked how he was injured, Hobbs told police that S.B. had tried to kill him. Hobbs later admitted to police that he had stabbed himself to deflect suspicion away from himself and onto S.B. At the time of the incident, S.B. was 17 years old and Hobbs was 28.

{¶ 4} Hobbs was arrested and charged with rape, abduction, and assault. In exchange for his plea, the state agreed to amend the charges to gross sexual imposition and unlawful restraint, and dismissed the assault charge. Hobbs pled guilty to the reduced charges and was sentenced to five years of community control and deemed a Tier I sexual offender. Hobbs later violated the terms of his community control and was ordered to serve a 12-month prison sentence. The trial court later granted Hobbs judicial release after he had served approximately six months of his sentence. Hobbs later filed a petition for post-conviction relief in 2010, in which he argued that there was new evidence that S.B. told the police inconsistent stories on the day of the incident and that his trial counsel was ineffective. The trial court denied Hobbs' motion.

{¶ 5} In August 2012, Hobbs filed a motion to withdraw his guilty plea. At the hearing, Hobbs testified that he had received information through the Freedom of Information

Act that demonstrated that S.B. told inconsistent stories to police and that a child services agency had investigated S.B.'s mother as a result of the incident to determine whether she was properly supervising S.B. Hobbs also testified that he and S.B. "chatted" on line, and that during their conversation, S.B. admitted to lying to police about the rape and making up the story because she was angry with him. Hobbs testified that he showed the conversation to his attorney before he pled guilty, but his attorney told Hobbs that they could not use it because of admissibility issues. Hobbs claimed during the hearing on his motion to withdraw his plea that he would not have pled guilty to the charges had he been aware of the inconsistent stories and child service investigation, and had his attorney agreed to use the chat room conversation as evidence. The trial court denied Hobbs' motion to withdraw his guilty plea. Hobbs now appeals the trial court's denial of his motion to withdraw his guilty plea, raising the following assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} A PLEA THAT IS INVOLUNTARY, UNKNOWING AND MUST BE VACATED. [sic]

{¶ 8} In Hobbs' first assignment of error, he claims that the trial court erred in denying his motion to withdraw his guilty plea.

{¶ 9} Pursuant to Crim.R. 32.1, "a motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of a manifest injustice. *State v. Williams*, 12th Dist. No. CA2012-08-060, 2013-Ohio-1387, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261(1977), paragraph one of the syllabus. In general, manifest injustice relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is

inconsistent with the demands of due process. *Williams*, 2013-Ohio-1387, citing *State v. Williams,* 12th Dist. No. CA2009-03-032, 2009-Ohio-6240, ¶ 11. Accordingly, a post-sentence motion to withdraw a guilty plea is "allowable only in extraordinary cases." *Williams*, 2013-Ohio-1387 at ¶ 12.

**{¶ 10}** A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court. *Smith,* 49 Ohio St.2d at paragraph two of the syllabus. The good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by that court. *Id.* Thus, we review a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion, and we reverse that denial only if it is unreasonable, arbitrary, or unconscionable. *State v. Taylor,* 12th Dist. No. CA2007-12-037, 2009-Ohio-924, ¶ 11.

**{¶ 11}** Hobbs argues that S.B. made inconsistent statements to police on the day of the incident, and that he would not have pled guilty had he known about the evidence. In the account given soon after police responded to the 911 call, S.B. stated that Hobbs had pushed her to the ground and raped her. In the account she gave the officer at the hospital, she stated in more detail that she had laid across Hobbs' bed wearing a bathrobe after showering. S.B. told the officer that Hobbs was rubbing her legs, she told him to stop once his hand approached her vaginal area, but that Hobbs forcefully inserted multiple fingers into her vagina against her will.

**{¶ 12}** Hobbs argues that these stories are inconsistent and that had the state turned over the contradicting statements to him prior to his plea, he would not have pled guilty. However, there is no indication in the record that the different stories would have actually caused Hobbs to not plead to the charges. In both accounts, S.B. very clearly stated that Hobbs raped her, and that he inserted fingers into her vagina against her will. While the second account given at the hospital had more details, the fact remains that S.B.'s statement

that Hobbs raped her did not change.

{¶ 13} Hobbs also argues that he was not made aware of the fact that a child services agency was investigating S.B.'s mother as to whether she was properly supervising S.B. However, an ongoing investigation regarding S.B.'s mother has absolutely no bearing on Hobbs, as such investigation was specific to whether S.B.'s mother was properly supervising her daughter. The investigation did not change the fact that S.B. accused Hobbs of rape, and had no relevancy when determining Hobbs' guilt.

{¶ 14} Hobbs also asserts that he would not have pled guilty had his attorney agreed to use the online chat conversation he had with S.B. wherein she stated she lied to police about the rape because she was angry with him. However, the record is clear that Hobbs had the chat room print-out available to him before he pled guilty, and was obviously aware of its existence, as he had participated in the conversation and printed a copy for his attorney. The fact that Hobbs' attorney did not feel that the conversation was admissible evidence does not render the guilty plea a manifest injustice. Instead, Hobbs made the decision to plead guilty to reduced charges, and he did so knowing full well of the conversation he had with S.B.

{¶ 15} Despite Hobbs' assertion that he would not have pled guilty, the trial court did not believe Hobbs' testimony. As previously stated, the good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court. The trial court found that Hobbs' credibility was questionable, and stated that it would "weigh the credibility of this case against the defendant." Included in that weighing is the fact that Hobbs was faced with serious charges against him, agreed to plead guilty to reduced charges, and has failed to demonstrate that his plea resulted in a manifest injustice. As such, Hobbs' first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

- 5 -

{¶ 17} A PLEA MADE PURSUANT TO A VIOLATION OF *BRADY V. MARYLAND* MUST BE VACATED.

{¶ 18} Hobbs argues in his second assignment of error that he should have been permitted to withdraw his guilty plea because the information he obtained through the Freedom of Information Act had not been disclosed to him before he made his plea, and was thus a violation of the rule that exculpatory evidence must be turned over to the defense. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963). As stated by the Ohio Supreme Court,

> Suppression by the prosecution of evidence that is favorable to the accused and "material either to guilt or to punishment" is a violation of due process. Evidence suppressed by the prosecution is "material" within the meaning of *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. As the United States Supreme Court has stressed, "the adjective ['reasonable'] is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

(Internal citations omitted.) *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 27, quoting *Kyles v. Whitley,* 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995).

{¶ 19} Hobbs argues that the prosecution failed to turn over the police record of S.B.'s statement made at the hospital that Hobbs rubbed her legs before he raped her, as well as the report regarding the child service agency's investigation into S.B.'s mother. However, neither the statement that Hobbs rubbed S.B.'s legs nor the investigation into S.B.'s mother was material to the case against Hobbs because there is no reasonable probability that Hobbs would not have pled guilty had the evidence been disclosed to him prior to his plea.

{¶ 20} As previously stated, the statement given at the hospital was more detailed in that S.B. described how she laid across Hobbs' bed in a bathrobe and that she allowed

Hobbs to rub her legs.  However, S.B.'s statement did not change from the time she first encountered police after making the 911 call to when she gave her full statement at the hospital.  S.B. consistently told officers that Hobbs forced his fingers into her vagina without her permission to do so, and over her objections.  Therefore, Hobbs had complete notice of S.B.'s allegations, and the basis for the state's charge of rape.

{¶ 21} Hobbs stated at the hearing on his motion to withdraw, and maintained throughout the case, that he did not have sexual relations with S.B. immediately before or during the incident.  However, evidence of his rubbing S.B.'s legs under her bathrobe would not go to prove that Hobbs did not have any sexual contact with S.B., it would actually tend to indicate that Hobbs was acting with a sexual motivation in the seconds immediately preceding the rape.  For multiple reasons, we do not find the statement regarding Hobbs' rubbing S.B.'s legs to be material to Hobbs' guilty plea.

{¶ 22} Nor is the investigation into S.B.'s mother material.  As previously stated, the investigation by a child services agency into whether S.B.'s mother was properly supervising S.B. has no bearing whatsoever on whether Hobbs raped S.B.  Even had this investigation been known to Hobbs before he made his plea, there is no indication that he would have disregarded the state's offer to reduce two charges and dismiss one in order to have a jury decide his guilt or innocence.

{¶ 23} There is no indication in the record that the evidence discovered as a result of the Freedom of Information Act was material to Hobbs' decision to plead guilty or not.  Therefore, we overrule Hobbs' second assignment of error.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE COURT ERRED IN REFUSING TO HEAR EVIDENCE OF INEFFECTIVENESS OF COUNSEL.

{¶ 26} Hobbs argues in this third assignment of error that the trial court erred in

refusing to hear evidence regarding his claim that his trial counsel was ineffective.

**{¶ 27}** Hobbs asserts that his trial counsel was ineffective for failing to use the chat room discussion wherein S.B. stated that she lied about the rape because she was angry with Hobbs. However, and as pointed out by the trial court, Hobbs is barred by res judicata from raising an ineffective assistance of counsel claim under these circumstances.

**{¶ 28}** Claims submitted in support of a Crim.R. 32.1 motion to withdraw a guilty plea that could have been raised on direct appeal, but were not raised in direct appeal, are barred by res judicata. *State v. Hendrix*, 12th Dist. No. CA2012-05-109, 2012-Ohio-5610, ¶ 11. The record is clear that Hobbs did not appeal after his plea was accepted and he was sentenced. Nor did Hobbs appeal after the trial court considered Hobbs' motion for postconviction relief. In that motion, Hobbs argued to the trial court that his attorney should have used the chat room conversation to establish Hobbs' innocence. However, the trial court denied Hobbs' motion for postconviction relief, and Hobbs did not appeal that decision. Therefore, Hobbs' ineffective assistance of counsel claim is barred by res judicata, and his third assignment of error is overruled.

**{¶ 29}** Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.