[Cite as *State v. Sekse*, 2016-Ohio-2779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-07-015 |
| | : | O P I N I O N |
| - vs - | | 5/2/2016 |
| | : | |
| MARK E. SEKSE, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 2014 CR 11502

Martin P. Votel, Preble County Prosecuting Attorney, Courthouse, 101 East Main Street, 1st Floor, Eaton, Ohio 45320, for plaintiff-appellee

Rion, Rion, Rion, L.P.A., Inc., Jon Paul Rion, Nicole Rutter-Hirth, 130 West Second Street, Suite 2150, Dayton, Ohio 45402, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Mark Sekse, appeals a decision of the Preble County Court of Common Pleas denying his request for a *Franks* hearing to challenge the credibility of an affidavit that supported a search warrant executed at his residence.

{¶ 2} Sekse was investigated for trafficking in marijuana, and a detective ("affiant") provided an affidavit regarding criminal activity over several years linked to Sekse. Part of

the information contained in the affiant's affidavit was specific to a confidential informant ("the CI") who advised that he had purchased large amounts of marijuana from Sekse and Sekse's stepson, Jason Wampler.  The affiant first made contact with the CI when the affiant was undercover and made a buy of 5 pounds of marijuana from the CI.  The CI then agreed to work with the affiant, even though the CI expressed his fear that Sekse was a dangerous man and that he was endangering himself and his family by informing on Sekse.  The CI offered an extensive proffer to the prosecutor and affiant regarding his criminal dealings with Sekse and Wampler, which was recorded and transcribed.

{¶ 3}  The affiant later filed an affidavit to support a request for a search warrant of Sekse's residence, and therein referred to the CI as "reliable."  The affiant also included in the affidavit other information regarding the relationship between the CI and Sekse, such as that the CI had bought various quantities of marijuana from Sekse in the past and that the CI had seen marijuana in and bought marijuana from Sekse's residence.  A separate confidential informant told police that he too had been to Sekse's residence and observed large amounts of bundled marijuana.  This information was also contained in the affidavit.

{¶ 4}  Based on the information in the affidavit, a search warrant was issued for papers and documents and was executed soon thereafter at Sekse's residence.  During the execution of the warrant, detectives located 212 pounds of marijuana in Sekse's garage.  Sekse then gave consent for the detectives to search the rest of his residence for drugs or drug-related items.

{¶ 5}  Sekse later filed a motion with the trial court, indicating that nine alleged inconsistencies existed in the affidavit, thus requiring a *Franks* hearing to determine the overall credibility of the affiant and affidavit.  Sekse supported his argument for a *Franks* hearing by making reference to the transcript of the proffer the CI gave to the prosecutor and affiant regarding his knowledge of Sekse's criminal activity, as well as his own affidavit.

Sekse also submitted an affidavit from the CI, in which the CI denied telling the affiant that Sekse had sold him drugs. The trial court determined that the CI's last-minute affidavit denying his informing on Sekse was not credible and was, instead, based on fear and intimidation from Sekse.

{¶ 6} The trial court denied Sekse's motion for a *Franks* hearing, finding that Sekse had failed to make a substantial preliminary showing that the affiant was intentionally dishonest or reckless as to the honesty of his affidavit. Sekse then pled no contest to the charges against him, and was sentenced to a mandatory prison term of 11 years. Sekse now appeals the trial court's decision to deny his motion for a *Franks* hearing, raising the following assignment of error for our review:

{¶ 7} THE TRIAL COURT ERRED IN FAILING TO GRANT A *FRANKS V. DELAWARE* HEARING, ADDRESSING FALSE STATEMENTS AND MATERIAL OMISSIONS FROM THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT, DESPITE THE DEFENSE PRESENTING SIGNIFICANT EVIDENCE OF THE STATEMENTS AND OMISSIONS.

{¶ 8} Sekse argues in his assignment of error that the trial court erred in denying his request for a *Franks* hearing because he presented evidence of several inconsistent statements contained in the affiant's affidavit.

{¶ 9} According to *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674 (1978), the Fourth Amendment guarantees criminal defendants the right to a hearing to challenge the validity of a warrant affidavit. However, in order to overcome the "presumption of validity" accorded to warrant affidavits as recognized in *Franks*, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to the finding of probable case." The *Franks* Court,

therefore, adopted a two-part test that the defendant must meet in order to prove that he is entitled to the hearing during which he can attack the credibility of the affiant. *Id.* The defendant must make a "substantial" showing that the affiant made a false statement either knowingly or with reckless disregard for the truth, and the allegedly false statement must be necessary to a finding of probable cause. *Id.*

{¶ 10} Reckless disregard means that "the affiant had serious doubts of an allegation's truth." *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 22. Omissions are considered false statements if they are designed to mislead, or are made in reckless disregard of whether they would mislead the magistrate. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 31 (2005). "Except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15.

{¶ 11} We first recognize that the law in Ohio is unsettled regarding what standard of review is appropriate when reviewing a trial court's decision to deny a *Franks* hearing. At least one Ohio court has found that a de novo standard applies. *See State v. Choice*, 2d Dist. Montgomery No. 25131, 2013-Ohio-2013. However, most federal courts find that a clear error standard applies in which some deference is given to the trial court's findings of facts. "When reviewing a district court's denial of a *Franks* hearing, we review the district court's factual findings for clear error and its conclusions of law de novo." *United States v. Bucio-Cabrales*, 6th Cir. No. 14-3991, 2016 WL 1018360, *5 (Mar. 14, 2016). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *State v. Bryant*, 5th Dist. Holmes Nos. 10CA019 and 10CA020, 2011-Ohio-

3353, ¶ 24.

**{¶ 12}** While we find that the trial court did not err under either standard, we nonetheless believe that the clear error standard is more appropriate when reviewing whether a trial court properly denies a *Franks* hearing. The law is well-settled that when reviewing a motion to suppress, an appellate court gives deference to the trial court's resolution of factual questions and determinations of witness credibility. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353.

**{¶ 13}** We believe the same reasoning is applicable to the determination of whether a *Franks* hearing is warranted because the trial court is in the best position to resolve factual questions and to address issues of credibility. *See State v. Scott*, 7th Dist. Mahoning No. 95 C.A. 140, 1998 WL 124527, *6 (Mar. 9, 1998) (recognizing importance of giving deference to trial court during *Franks* hearing because the "weight of the evidence and credibility of witnesses are primarily for the trier of the facts" during suppression hearings). As such, we will give deference to the trial court's factual findings, and apply a de novo review to the required conclusions of law.

**{¶ 14}** Sekse alleges that he made a substantial preliminary showing that the affiant knowingly and intentionally made nine false statements, and that the allegedly false statements were necessary to the finding of probable cause. However, we find that the record does not show that Sekse was entitled to a hearing because either the record supports the affiant's representations, or any falsity in the statement would not have impacted the overall probable cause determination.

**Alleged Inconsistency #1:**

**CI never dealt with Sekse, only another drug dealer, Jason Wampler**

**{¶ 15}** Sekse argues that the CI's affidavit proves that the CI never told the affiant that he had engaged in drug activity with Sekse only that the CI had engaged in drug activity with

Sekse's stepson, Jason Wampler. According to the affidavit, the affiant averred that the CI indicated that the marijuana from an undercover buy was to be supplied by Wampler and Sekse. However, and according to the CI's affidavit, he never told the affiant that Sekse would supply the marijuana, only that Wampler would.

{¶ 16} We begin by noting that the trial court made a specific finding that the CI's affidavit was not credible because the CI made his averments in response to fear of Sekse. Even if we were to disregard the trial court's finding and apply a de novo review of whether the CI's affidavit is credible, we too would find that the CI's affidavit lacks credibility due to the multitude of times that the CI expressed fear due to informing on Sekse and the potential consequences that could befall him and his family should Sekse learn of his involvement.

{¶ 17} Despite the CI's affidavit denying any involvement with Sekse, the record contains a transcript of the CI's taped proffer with the prosecutor and the affiant in which the CI stated, "um, the guy that the uh, with the regular marijuana source of like the lower grade Mexican stuff around here, um, this is very dangerous for me to even say, is uh, Mark Sexse [sic]." Further in the transcript, the affiant asked the CI whether Sekse kept "anything" at his house, to which the CI explained, "I mean yeah he has cause I went there - - you know what I mean. I've went there and seem 'em before. So, but it's like I can't go up - - what Mark [Sekse] does is he goes gets the stuff, takes it to his house, he's pretty much got somebody there waiting to grab it and then they leave."

{¶ 18} While the transcript makes reference to the CI dealing directly with Wampler and his fear of talking directly to Sekse, the transcript also makes clear reference to Wampler and Sekse being the providers of the drugs. For example, the CI was asked whether Sekse and Wampler worked together, and the CI answered "yes." As such, there is no indication in the record that the affiant's averment that the CI indicated that Sekse was his supplier was false or misleading.

**Alleged Inconsistency #2:**

**Affiant called the CI reliable in the affidavit but did not consider the CI reliable**

{¶ 19} The record indicates that the affiant called the CI reliable in the affidavit and relied on several of the CI's statements in the affidavit to demonstrate that probable cause existed that Sekse was involved in drug trafficking. Sekse argues that the statements calling the CI "reliable" were inconsistent with former statements made by the affiant in which he intimated that the CI was not fully cooperative or was less than reliable.

{¶ 20} First, Sekse points to the CI's affidavit in which the CI stated that the affiant called him a "fucking liar." However, the trial court clearly indicated that the affidavit was not credible where it was based on a threat and the CI's fear that Sekse would harm the CI or his family. We agree. Moreover, and even if the CI's affidavit was reliable, the fact that the affiant called the CI a liar at one point in time does not make his statement that the CI had provided reliable information in the past inaccurate. Nor does it provide a hardline statement that the CI lacked credibility generally.

{¶ 21} Second, Sekse argues that the affiant sent an email to the prosecutor in which he indicated that the CI had not helped with the case against Sekse. We have reviewed the email. However, nowhere in the email does the affiant refer to the CI as a liar, or that he had lied in the past. The email only states that the CI had not been helpful in the case, and specifically stated that—at that point in time—the CI had not yet provided useful information on "Mark Sekse or Jason Wampler his true marijuana suppliers." As such, there is no indication in the record that the affiant's averment that the CI was reliable was false or misleading.

**Alleged Inconsistency #3:**

**CI never told the affiant that Sekse was his supplier**

{¶ 22} The CI stated in his affidavit that he never told the affiant that Sekse was his

supplier. As quoted above in the first alleged inconsistency section, the CI's proffer makes several references to Sekse being one of his direct suppliers. For example, the CI stated that he had been in Sekse's garage and that he handed Wampler money, only to have Wampler "go hand it straight to Mark [Sekse]." The proffer also included a direct question from the prosecutor of "who you buying from?" to which the CI responded, "um, the guy that the uh, with the regular marijuana source of like the lower grade Mexican stuff around here, um, this is very dangerous for me to even say, is uh, Mark Sexse" [sic].

{¶ 23} During the proffer, the prosecutor also referenced the statement made by the CI that Sekse and Wampler sold lower grade marijuana and started a question, "when you mentioned buying off Sekse and Wampler, you mentioned* * *" to which the CI interrupted and stated, "they're mainly - - that's mainly low grade. That's what, that's what they supply." The prosecutor asked the CI where five pounds of marijuana seized in a van came from and the CI responded, "that came from the one - - the Sekse, the Wampler."

{¶ 24} Reading the transcript as a whole, the CI references Wampler and Sekse together as his suppliers, and also references his fear of Sekse individually because of Sekse's reputation for intimidation and revenge, as well as Sekse's criminal history. As such, there is no indication in the record that the affiant's averment that the CI indicated that Sekse was his supplier was false or misleading.

**Alleged Inconsistency #4:**

**CI never told the affiant that he ever handed Sekse any money**

{¶ 25} The CI's taped proffer indicates that the CI never handed money directly to Sekse. However, the CI stated in his proffer that he handed the money to Wampler, who then handed it directly to Sekse. As previously stated, the CI confirmed that Wampler and Sekse worked together so that the CI's statement that he directly gave Wampler money did not demonstrate that the affiant was misleading by stating that the CI was involved in money

transactions with Sekse. As such, there is no indication in the record that the affiant's averment that the CI gave Sekse money was false or misleading.

**Alleged Inconsistency #5:**

**CI never saw any marijuana at Sekse's residence**

{¶ 26} Sekse claims that the affiant lied in his affidavit by stating that the CI saw marijuana at Sekse's residence. However, during the proffer, the CI told the affiant that he had picked up marijuana from Sekse's house and specifically said, "I've picked up from there. I've been there." As such, Sekse has shown no indication in the record that the affiant's averment that the CI saw marijuana at Sekse's house was false or misleading.

**Alleged Inconsistency #6:**

**Other officers never spoke to an additional CI about Sekse**

{¶ 27} Sekse argues that the affiant's averment that a different informant spoke to an officer about Sekse was false. He presented the affidavit of his attorney who averred that he spoke to the officer mentioned in the affidavit, Officer Crull, and that Officer Crull stated that he had never interviewed a different informant about Sekse. However, and according to a Department of Justice report given to the affiant, "Officer Scott Crull and Officer Chad Porfidio conducted an interview with Wayne County Drug Task Force [redacted] reference events which occurred on" different dates.

{¶ 28} Even if the officer never participated in the interview with the other informant, the affiant's statement was based on a specific statement in the DOJ report, and was not a misrepresentation. As such, there is no indication in the record that the affiant's averment that a second CI informed on Sekse to an officer was false or misleading.

**Alleged Inconsistency #7:**

**A different CI never visited Sekse's residence**

{¶ 29} Sekse argues that the affiant's claim that a second CI drove to Sekse's house on a specified date was a misrepresentation because Sekse lived in a gated community and the gated community's log never showed a visitor on that date. However, the record indicates that the affiant's averment was based on a DOJ report he received and read in which the issue of a different informant visiting Sekse's residence was addressed. As such, the affiant did not offer false or misleading information where the issue was addressed in a DOJ report. Moreover, and even if the statement was false as reported on the DOJ report, the information regarding a second CI was not necessary to a finding of probable cause. Instead, all of the other information contained in the affidavit was enough to establish probable cause. That another informant did or did not drive to Sekse's house does not impact the remaining information the CI gave in regard to Sekse being a marijuana trafficker. Therefore, there is no indication in the record that the affiant's averment that a second CI went to Sekse's home was false or misleading—or that such would have any impact on the underlying probable cause supporting the search warrant.

**Alleged Inconsistency #8:**

**Sekse's home does not have a basement, thus information that marijuana was stored there is inaccurate**

{¶ 30} Sekse argues that the affidavit contains a false statement that a CI saw large amounts of marijuana stored in his basement. Sekse presented information that his house does not have a basement to show that the statement was false or misleading. However, there is nothing in the record that indicates that the affiant was not informed that Sekse's home had a basement or that the storage of marijuana did not occur there. The fact that the informant could have been lying when he told the affiant that he saw marijuana in Sekse's basement does not impugn the affiant's credibility and whether he, as the affiant, made a misrepresentation. As such, there is no indication in the record that the affiant's averment

that an informant told the affiant the informant saw marijuana in Sekse's basement was false or misleading. Nor would the location of the marijuana, whether misreported or misremembered, ultimately effect the determination of probable cause.

**Alleged Inconsistency #9:**

**Sekse was never convicted of attempted murder**

{¶ 31} Sekse argues that the affiant included a false reference to Sekse being convicted of attempted murder. Sekse is correct that he has never been convicted of attempted murder. However, and whether or not Sekse was convicted or charged with attempted murder did not have an impact on a probable cause determination where the pertinent crimes were drug-related, there were many other indications of probable cause based on the other information contained in the warrant. Even if the affiant's averment that Sekse was convicted of a crime was false, it does not have any bearing on the probable cause determination.

**Conclusion**

{¶ 32} After reviewing the record, we find that the trial court properly denied Sekse's request for a *Franks* hearing, as he failed to make a substantial preliminary showing that false statements knowingly and intentionally, or with reckless disregard for the truth, were included by the affiant in the warrant affidavit and that the allegedly false statements were necessary to the finding of probable case. Sekse's assignment of error is therefore, overruled.

{¶ 33} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.

- 11 -